IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW A. JOHNSON, *Plaintiff*, <br><br> v. <br><br> MONTGTOMERY COUNTY COURT OF COMMON PLEAS, *Defendant*. | CIVIL ACTION NO. 22-170 |

### MEMORANDUM RE: DEFENDANT'S MOTION TO DISMISS

**Baylson, J.**                                                                                                                        **June 17, 2022**

### I.   INTRODUCTION

Plaintiff Andrew A. Johnson ("Plaintiff") alleges one claim of gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") against Defendant Montgomery County Court of Common Pleas ("Defendant"). Defendant moves for dismissal for failure to state a claim under Rule 12(b)(6), arguing Plaintiff failed to allege sufficient facts to establish he is an "employee" as defined by Title VII or that his termination was based on gender discrimination.[1]

### II.   RELEVANT FACTUAL ALLEGATIONS

Plaintiff, an adult male, was hired as a Court Crier in the Montgomery County Court of Common Pleas. ECF 1 ("Compl.") ¶ 7. He was assigned to the Honorable Garrett D. Page. Compl. ¶ 9.

In 2018, Plaintiff ended a romantic relationship with Ms. Diane DeSanto, a Court Reporter in Judge Page's Courtroom. Compl. ¶ 11. In late November of 2018, Ms. DeSanto notified Judge

---

[1] Defendant argues Plaintiff's gender discrimination claim proceeds under a theory of "reverse discrimination." See ECF 4, Defendant's Motion to Dismiss ("Mot.") at 4. Plaintiff counterargues that the McDonnell Douglas analysis applies. See ECF 5, Plaintiff's Response in Opposition ("Resp.") at 6.

Page that Plaintiff had physically assaulted her; Plaintiff alleges Ms. DeSanto's assault allegation is false. Compl. ¶¶ 12–13.

On November 30, 2018, Judge Page terminated Plaintiff, citing Plaintiff's failure to meet performance standards and violation of the Code of Conduct for Employees of the Unified Judicial System as the reasons for Plaintiff's termination. Compl. ¶¶ 13–14. Plaintiff alleges he was terminated before he had any opportunity to refute Ms. DeSanto's claims and before any investigation into the veracity of those claims was undertaken. Compl. ¶ 13. Plaintiff alleges Judge Page's reasons for his termination were pretextual and that, "had [Plaintiff] been a woman, his employer would have conducted an investigation into the false allegations made by Ms. DeSanto and [Plaintiff] would not have been fired." Compl. ¶¶ 15–16.

### III.  PARTIES' CONTENTIONS

Defendant moves to dismiss Plaintiff's Complaint, arguing Plaintiff failed to demonstrate he is entitled to Title VII protection because Plaintiff falls within Title VII's "personal staff" exception to its definition of "employee." Mot. at 5–7.[2] Should the Court find Plaintiff sufficiently alleged he is an "employee," Defendant argues Plaintiff still failed to state a claim for reverse gender discrimination because the claim is supported by conclusory allegations and insufficiently allegations of pretext. Mot. at 7–10.

Plaintiff counterargues that he is not a member of Judge Page's "personal staff"—and thus is a Title VII protected "employee"—because he did not work in a highly intimate and sensitive position of trust with Judge Page. Resp. at 5. Plaintiff also argues his Complaint alleged sufficient facts to raise a question of discrimination and disparate treatment based on gender. Resp. at 6. At oral argument, Plaintiff's counsel argued it is not Plaintiff's burden to allege the absence of a

---

[2] The Court requests Defendant utilizes page numbers in its future filings.

"personal staff" relationship, nor is Plaintiff required to plead a prima facie case of gender discrimination.

IV. **LEGAL STANDARD**

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotations and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Although a court must accept as true all factual allegations contained in a complaint, this requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556 n.3) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests.")). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

V.   **ANALYSIS**

   A.   **Title VII Eligibility—Personal Staff Exemption**

Title VII makes it unlawful for an employer "to discharge any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). Title VII applies to any individual employed by an employer, but it does not protect "any person elected to public office in any State . . . or any person chosen by such officer to be on such officer's personal staff." 42 U.S.C. § 2000e(f). This exemption to Title VII's definition of employee is known as the "personal staff" exemption.

In Teneyuca v. Bexar County, 767 F.2d 148, 151 (5th Cir. 1985), the Fifth Circuit articulated the leading six-factor test to evaluate whether the personal staff exemption applies. The Third Circuit endorsed employment of the Teneyuca test to analyze personal staff exemption applicability. Clews v. Cty of Schuylkill, 12 F.4th 353, 360 (3d Cir. 2021).[3] From the Teneyuca factors, Clews distilled two key themes for an employee to be considered the personal staff of an elected official: (1) the employee "must work closely with the official in a sensitive position of trust and confidence" and (2) the official must have "personal control over the employee's hiring, promotion, work conditions, discipline, and termination."[4] Clews, 12 F.4th at 362.

The first theme of Clews encompasses the following factors:

- Teneyuca factor 2: whether the plaintiff is accountable to only the elected official;

---

[3] Although Clews analyzes personal staff membership under the Fair Labor Standards Act ("FLSA") and not Title VII, the personal staff exemptions in both the FLSA and Title VII are interpreted consistently. Clews, 12 F.4th at 360 ("Courts have taken the sensible approach of interpreting the FLSA's personal staff exception consistently with its counterparts in other statutes, including Title VII.").

[4] At oral argument, Plaintiff's counsel conceded Defendant can establish the second Clews theme. Plaintiff's counsel clarified Plaintiff only disputes Defendant's ability to establish the first Clews theme.

4

- Teneyuca factor 3: whether the plaintiff represents the elected official in the eyes of the public;

- Teneyuca factor 5: the plaintiff's position within the organizational chain of command;

- Teneyuca factor 6: The actual intimacy of the working relationship between the elected official and the plaintiff.

Id. at 361 (citing Teneyuca, 767 F.2d at 151).

The second Clews theme assesses the remaining Teneyuca factors:

- Teneyuca factor 1: whether the elected official has plenary powers of appointment and removal;

- Teneyuca factor 4: whether the elected official exercises a considerable amount of control over the position.

Id.

Clews notes these factors are not intended to be exhaustive or individually dispositive, and instead suggests a fact-intensive analysis of "'the nature and circumstances of the employment relationship between the complaining individual and the elected official.'" Id. at 360–62 (citing Teneyuca, 767 F.2d at 151–52).

"Personal staff" exemption disputes are seldom decided on a FED. R. CIV. P. 12(b)(6) motion. Trush v. City of Phila., No. 21-3254, 2021 WL 5789056, at *4 (E.D. Pa. Dec. 6, 2021) (Surrick, J.); see also Buka v. Allegheny Cty., No. 669, 2021 WL 1197343, at *5 (W.D. Pa. Mar. 30, 2021) (denying a 12(b)(6) motion because whether a plaintiff falls within the "personal staff" exemption should be "decided after the parties have had a full and fair opportunity to gather sufficient record evidence as to what plaintiff's position entailed, in addition to those duties as stated in her job description."). In Trush v. City of Phila., the defendant moved to dismiss a Title

5

VII claim, arguing the plaintiff, an administrative assistant to Philadelphia Councilman Brian O'Neill, fell within Title VII's personal staff exemption. 2021 WL 5789056 at *1. The Court denied the City's motion because, although the "Complaint [] provided some information about who hired, supervised, transferred, and terminated Plaintiff's employment . . ." the highly factual questions of the plaintiff's "job responsibilities, the level of trust with Councilman O'Neill, and the level of sensitivity of the information [Plaintiff] handled . . . would be better answered after the parties have had an opportunity to generate a record." Id. at *5.

Here, as in Trush, the Complaint does not allege sufficient facts to permit this Court to undertake a complete Clews personal staff analysis. The Complaint provides allegations about Plaintiff's hiring (Compl. ¶ 7), assignment to Judge Page. (Compl. ¶ 9), and termination (Compl. ¶ 14), but Plaintiff does not allege who hired him, whether Plaintiff reported solely to Judge Page, how long Plaintiff was a court crier in Judge Page's courtroom, what level Plaintiff's role as court crier held in Judge Page's chamber's chain of command, what Plaintiff's responsibilities were as a court crier, or the level of sensitivity of information he handled. Therefore, as in Trush, this Court is presently unable to determine whether Plaintiff falls within the personal staff exemption of Title VII at this stage, and what, if any, of these allegations Defendant may dispute.

**B.  Title VII Gender Discrimination Claim**

    1.  Prima Facie Elements of Title VII Claim

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) establishes the framework under which Title VII discrimination claims are analyzed. Under this framework, the plaintiff-employee must first establish a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 326 (3d Cir. 2015).[5]

---

[5] After a prima facie case is made, the burden shifts to the defendant-employer, who must demonstrate it has a legitimate, non-discriminatory reason for its conduct. McDonnell Douglas,

To establish a prima facie case, the plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position; and (3) he was fired from that position (4) "under circumstances that give rise to an inference of unlawful discrimination." Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999).

The parties do not dispute Plaintiff pled the first three prima facie elements of a Title VII discrimination claim: Plaintiff was a member of a protected class (male) (Compl. ¶ 18); Plaintiff was qualified for the position (Compl. ¶¶ 7, 10, 15); and Plaintiff was fired from the position (Compl. ¶ 18). Defendant argues Plaintiff failed to sufficiently plead the fourth element—that he was fired under circumstances that give rise to an inference of unlawful discrimination—because Plaintiff's allegation that "a woman accused of assaulting her partner would have been given the benefit of the doubt" is conclusory and speculative. Mot. at 8.

This Court cannot draw a reasonable inference from the Complaint that Defendant terminated Plaintiff because of his sex or due to any discriminatory animus. There are no allegations in the Complaint to support Plaintiff's conclusion that "had he been a woman, his employer would have conducted an investigation into the false [physical assault] allegations." Compl. ¶ 16. Although a complaint "need not establish a prima facie case in order to survive a motion to dismiss,'" Connelly v. Lane Const. Corp., 809 F.3d 780, 788–89 (3d Cir. 2016), a plaintiff "cannot merely state that he was discharged due to his [protected quality]. That is a conclusory assertion and will not suffice." Santos v. Iron Mountain Film & Sound, 593 F. App'x. 117, 119 (3d Cir. 2014). Because the thrust of a Title VII discrimination claim is that a plaintiff was treated less favorably than others because of the plaintiff's protected quality, a plaintiff "must

---

411 U.S. at 802. The burden then shifts back to the plaintiff, who must show the employer's legitimate, non-discriminatory reason is simply pretext for discrimination. Id. at 804.

plead *facts* that plausibly connect his [protected quality] to his discharge." Santos, 593 F. App'x. at 119 (emphasis in original).

In Inella v. Lenape Valley Fdn., this Court granted a 12(b)(6) motion because the plaintiff failed to "allege any facts showing [her] sex was a factor in her termination[,]" i.e., that "she was replaced by a male employee or that similarly situated male employees were treated more favorably." No. 14-2862, 2014 WL 3109973, at *3 (E.D. Pa. July 8, 2014) (Baylson, J.). Here, Plaintiff similarly failed to allege any facts that would allow the Court to infer that a causal connection between his gender and his termination. Plaintiff's sole allegation that "had [he] been a woman, his employer would have conducted an investigation into the false allegations made by Ms. DeSanto and [he] would not have been fired" (Compl. ¶ 16) is precisely the type of "legal conclusion [] couched as a factual allegation" that Twombly proscribes. Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

### 2. Pretext

Defendant also argues Plaintiff is required to establish pretext in his Complaint, but that Plaintiff's Complaint fails to do so. Mot. at 9–10. This Court disagrees. The Third Circuit has established that, at this motion to dismiss stage, Plaintiff is "not obliged to choose whether [he] is proceeding under a mixed-motive or pretext theory, nor is [he] required to establish a prima facie case, much less to engage in the sort of burden-shifting rebuttal that McDonnell Douglas requires at a later stage in the proceedings." Connelly, 809 F.3d at 791.

## VI. CONCLUSION

Based on the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED without prejudice**. An appropriate Order follows.